Before today, four argued cases. The first is Martin v. United States, case number 172224, an appeal from a decision of the United States Court of Federal Claims. Mr. Dunn, you want five minutes for rebuttal? Okay. All right, you may begin. May it please this honorable court, my esteemed colleagues. I'm joined today by one of the appellants. I'd like to make note of the fact that Sandra Knox is here in the courtroom, and I'm also joined by Co-Counsel Marsha Ray at table. I do believe that the correct place to start this discussion today with the court is two points from our opening brief. The first is the citation to the letter that we received, that our clients received from the U.S. Forest Service. And in that letter, they discuss that when it comes to the vested property right easements that our clients both alleged and the complaints exist and that they possess, that they do not agree and that anybody attempting to utilize those easements does so under the threat of criminal prosecution or civil prosecution. I think that that is the threshold issue where the lower court went astray. Ultimately, that property interest, that compensable property interest taken as true in the complaint would have formed the basis for this case to continue on. So I understand it. So what you are then saying that your focus is on an unconstitutional conditions case. That's correct. You know, I've read that letter and yes, they say they don't agree that you have you have rights under 2477. And I think that's a debatable proposition as to whether private parties can ever have such rights or whether they're only governmental rights. But putting that question aside, does it really say, it does say if you go ahead and use it, you could be subject to prosecution. But of course, you haven't been subject to that prosecution yet, right? That's right. And it doesn't say as far as I read it, that if you apply for a permit, that you would have to waive your ability to assert such rights separate and independent from a permitting process. Does it? I believe it does, Your Honor. And the reason why is contained in that first part of the last paragraph of the letter that I discussed, which is that we do not recognize these rights. Basically saying and making a determination that we talked about this briefing that under the omnibus public law permit law of 1997 section 108, that's a determination that they couldn't make, but they did. And upon that determination, what they're saying is there's no saving cause to your property, right? Interest. You can get a permit from us and that's how you can access your property. But that is the only way that you could do this. Now, of course, that turns to the question of whether or not there can be reasonable regulation. And we're not agreeing with the allegation in that letter that we have no property right. That's why we... Well, I guess I'll ask your friend on the other side whether or not they believe they've conditioned that. Because the reality is you haven't filed for quiet title under 2477, have you? No, that's correct, Your Honor. Okay. But you understand that at least under New Mexico law, it appears that you would have that right. That's correct, Your Honor. We do believe that. But ultimately, what the action was to say, we are occupying your easement and saying it is our easement was actually an occupation of that easement. And to say that they could not use that easement in the manner that they wanted to without the threat of criminal prosecution or civil prosecution is ultimately where the taking became ripe. That's our argument. And we believe that that language, especially given the considerations from the St. John's case, is why this case is ripe at this juncture. And Your Honor mentioned whether or not it is or isn't a property interest. I think that's a threshold question that ultimately the court would have to get to before they look at whether or not... Well, certainly the government made alternative arguments. One is there's no right to take to the Court of Federal Claims. And that even if there were a right to take, your claim for a regulatory taking is not yet ripe. And the Court of Claims did not address the first question. That's right. And you didn't ask for the Court of Claims to declare that you had such a right, did you? No. We believe it's a compensable property interest. We believe that the facts and the law as their election complaint support that that is a compensable property interest, such that there was enough information for the court to take as true that we had that compensable property interest and proceed to that determination of whether or not it had been taken at that point. Well, I think that's the way the court approached it. So even assuming that you have that compensable property interest, your regulatory taking claim is not right. That's correct. And you'll see in the briefing from both the parties that that discussion of whether or not it is a property interest dominates the briefing for us and for the government. I think that is, in both the parties' mind, a more threshold question than the rightness issue. Of course, the government in their motion did move that it was not right and should therefore be and we will prosecute you. It is a final determination by the agency and is therefore right that they have assumed and taken that property or extinguished that property through their administrative action. Okay. Does this mean that the letter that we're talking about makes Kuntz more applicable to you in this case? Yes, sir. In what manner? We believe that when this goes to the unconstitutional conditions, and Kuntz very clearly sets out that in order, if the government comes to you and says, okay, we'll give you a permit to continue to use this portion of your property, but in exchange, you have to agree with us that you're either giving up this property or you don't have this property right. That's on all fours, I believe, with Kuntz. Kuntz says that when the government extorts. But in Kuntz, they did apply for a permit. They did. They did. And we believe that when we reached out to the government and said, we want to go ahead and go use our property right. What do you need from us? And they wrote back and said, we don't think you have anything. Remember, it may not have been in the form of an application, but we initiated the communication with the government to say, we're going to go use our property. What do you need from us? They wrote back and said, well, we need a permit from you and we need you to understand you don't have that property. That's not your property. The initiation by our part. What's your authority that you would waive your property interest if you were to apply for a permit? I understand the argument, but I'm not quite sure I understand the authority upon which you base your argument. And this won't be readily available on the record. But in my background, and I do have, I have argued these issues with the BLM in past cases. This marks the second time I've had this and ultimately, there was some discussion with the Forest Service and with the BLM we did in the past that what's on their form, their form for a, and I forget the form number, for a special use permit. It can, it basically sets out that there is no way in there that you wouldn't, and I don't believe that there is a case that says that. Well, why wouldn't you then say, give me the permitting materials and I'll look at them and see if you've been imposing unconstitutional conditions upon either my getting a permit or would you, or as a prerequisite to receiving a permit. I believe we have the permitting materials. We've seen that. It's not contained in their, on their form. Your rights and reservations are not waived on this form or whatever that may be. That's fairly typical. I've seen those forms on numerous occasions. The letter says, we don't believe you have these rights. It doesn't say you don't have these rights and who, did they supply you with that general counsel opinion? The Forest Service did. All right. And I read that general counsel opinion as sort of a classic, I kind of conclude that these rights are only public rights, but it's a close call and there's lots of arguments on the other side. I mean, why isn't that enough for you to say they're not affirmatively saying that we are forever barred from making a challenge under 2477? I read the letter a little bit differently, Your Honor. I believe that when they cite, and this is apparent in their briefing as well, when they cite to the kinship case and when they cite to the sewer cases, it's very clear that they're saying that the only type of easement that exists is a public easement. Well, that's clear that that's what the government wants the answer to be. Right. But even they are conceding that it's not very clear. I don't know that I've read that particular concession. The letter does say, we caution that, and I'm quoting, we caution that anyone using the national forest lands in an unauthorized manner may be subject to criminal civil liabilities. I don't see that as firm enough as it being the type of denial that that you would like for us to believe this letter is. I believe read against the preceding sentences in that paragraph. It is when they say, we've looked at what you say you have as easements, and we do not agree that you hold those easements. And then they've, in the rest of the letter, they've discussed that under the law, as they see the law, that nobody holds a private easement under RS-2477. I have read the 10th Circuit cases that discuss this, and it appears that at least in the 10th Circuit, they either assume a private easement exists or conclude that under the law. It turns on a couple things, neither of which are in this record, which are, at what point do you say that the right vested, and how do you say that the right vested? And that gets to the propriety of a 12B6 motion. We've alleged what we believe are the facts sufficient to establish that this is a private easement, but the court did not get to that question. The appropriate remedy may be to remand. Okay, but so help me on these specific answers. When do you say the right vested? Before the Forest Reservation ever became final. These roads, these properties, existed before the Forest Reservation was even there. They were set up by the original patent holders, the predecessors in interest to my client. The properties in terms of just the land sitting there? The roads as well. The ingress and egress to those patented mining properties was established by those mining companies. And these, this was established in 1870s, right? 1880s, 1870s. Okay, at that time, how was the transportation being conducted in and out of the property? Is by foot or horse? Or wagon. Or wagon or mule? Not vehicular traffic. Sure, but there is other good case law when it comes to RS-2477s that discusses this, whatever the purpose of that road was. In fact, that's in the U.S. versus 9,941.718. The purpose of the road was to give you access to to your landlocked property. To mining properties, it was a mine haul road. That was the reason the road was established, was to haul ore back and forth out of the mining districts up there. That's the reason for the establishment of these roads. Those people that were, that placed those claims and worked those claims and established those roads to access those. Is this in the San Pedro Wilderness area? This is in, your honor will be familiar perhaps with Bandelier. Yes. It's to the south and to the west of Bandelier, north of Cochise Pueblo. There's the Cochise Pueblo golf course where the Dixon Apple Orchard used to be before the fire. It's to the north of that. In the Nevada case upon which you rely, one of the facts that the court relied upon is that those private entities actually helped build the road or contributed to either the monetary building of the road or the labor and building of the road. Do you have those facts here? We've alleged that those, that these roads were established upon those facts. That these are, that these roads were originally established to serve those mining claims and that those mining companies established those roads. That they helped pay for them, helped build them? I don't know why else a mining company would actually do that and nobody else would have built a road for a mine other than those mining companies. I think that that's an inherent... The government didn't build the road? You don't know? I'm sorry, your honor? The government didn't build the road? No, I doubt seriously that the government built the road. There's no evidence of the government building this particular road. In fact, the government didn't have any interest in this property until the forest reservation. There was really no interest in the government building that road. Now it was later maintained and I don't think that we've disputed that after it was erected and constructed by the mining companies that later on it was taken over by the state of New Mexico and they established a public highway there as well and the county of Sandoval maintains those roads for a long period of time as well. We don't dispute that there is a public easement there that the government could assert. They could have asserted a claim like this. They haven't. I don't think that they have any interest in keeping these roads open after the but certainly our clients who wish to establish another mining operation potentially there and to understand the value of that property would like to re-establish these roads as private roads. Okay, you're almost out of time so I'll restore three minutes for rebuttal. Good morning. Erica Kranz for the United States with me. It's Tyler Burgess also from the so I suppose you should start this 2015 letter. There simply is nothing in this letter that states that it is requiring these inholders to waive any kind of claimed rights that they have. It's simply stating the United States opinion. So what is the government's position on the argument that your opponent is making? If they apply for a permit, is the government going to then come back and say you waive the application or permit itself? Is that the government's position that you will not assert that type of defense? That's right. We're not saying that applying for a permit is any kind of waiver. There are cases. Well, let's say that they do apply for a waiver. Let's say that a permit rather. They apply for a permit a couple months from now. Are you going to come back and the application for in the process of applying for the permit, you waived whatever interest you may have had in the easement? No. Do you disagree with your friend on the other side who says that the actual forms that you use require them to indicate that there is no private right in the easement? Honestly, I haven't seen that form but that is not the position of the United States. They would be waiving any kind of interest here by applying for a permit. There are cases that we've cited in our briefs that show that even if a private entity holds an easement, it can still be regulated. That easement crosses Forest Service land. It's still subject to Forest Service regulation. That regulation does not require or constitute a waiver of any kind of private interest. What about the other onerous conditions that they say that you want to impose on them, such as the environmental impact studies and all of those other things? Again, that's part and parcel of the Forest Service regulation here. To give you a little bit of background here, in their complaint, the only basis for a private interest here that they're alleging is RS-2477. That statute clearly states that it grants rights-of-ways for highways, which are public roads. A highway is not a private road. The term highway was contemplated much differently in 1866. I was curious about that, too. I went and pulled up a couple of the oldest dictionaries I could find at the Department of Justice. There's one from 1901, a highway, a public road open to all passengers. One from 1828, a highway, a public road open to all passengers. I went to your same thing. What do we do with all these Tenth Circuit cases that seem to recognize that even if they are originally contemplated to be highways, that the point is that the easement is given not just to governmental entities, but to private parties under the appropriate circumstances? I'm not sure there's any cases saying that a private easement under RS-2477 can be held by private parties. The Nevada case doesn't say that? The condemnation case? That case is incorrect. Let me explain to you why. First of all, it terribly muddles the law, sort of mixes up the mining law and RS-2477. Okay, but you have to concede that you said you weren't aware of any case. There's that case, but then there are several others who ultimately conclude that there is not such a right, but in each instance they assume that there could be, and then they also say that whether such a right exists is defined by state law, not by the federal law. Even if they had a state law easement across Forest Service lands, I'm not even sure how that would work, but it would still be subject to Forest Service regulation. What they, again, have pled in their complaint is only RS-2477, and that condemnation case simply is wrong because it is entirely based on the premise that RS-2477 created some private interest and that those private individuals were excluding people and had basically taken control of a private road. It said it created a private easement. If it created a private easement, maybe there was some other basis for an easement there, but it couldn't have been RS-2477. What is the point of those, of creation of those new roads, if it wasn't to provide access to the parties who owned the land? They're public highways, right? So they're public ways for the public to generally have access across public lands. But a private easement is different than a public highway. I mean, there can be easements along a railroad, there can be easements along a highway, and that doesn't take away the private right. Right, but they're, again, only alleging RS-2477 as the basis for their alleged private easement here, and we're saying that that can't be possible, right? Even if it were, even if they had an easement under RS-2477, again, they don't, or some other theory, it would still be subject to reasonable regulation. And the mere application of regulation is not itself a taking. We know that from Riverside Bayview, obviously, it says just that, the mere application of regulation, it's not enough. You've got to go through a private process. Well, Koontz says, depending on how onerous the regulation is. Right, so in Koontz, two big problems with applying Koontz this place. First, in Koontz, that developer went through the work, applied for a permit, and the water district in that case said, nope, we're denying your permit. Here's how we would grant it, if you grant, deed us over some of your land. The only thing that, so these plaintiffs, of course, have not even begun to engage with the permit system. They're simply, but by definition, if you said we would grant it, if you agree that you have no private easement rights, then you would fit within Koontz. I don't, I guess possibly, but there's nothing here like that. I mean, the Forest Service is not asking for anything from them beyond compliance with the regulations. But what are the regulations? So the regulations came under a statute called ANILCA, which was enacted in 1980, and the regulations are found at 36 CFR 251.110, and it says, well ANILCA says, the Forest Service has to, let me make sure I've got the language here, they have to provide access to non-federally owned land within the boundaries of the national forest system, as the Secretary deems adequate to secure the owner in the reasonable use and enjoyment thereof, provided that such owner comply with rules and regulations applicable to ingress and egress. So the normal regulations, and then we have the regs that talk about the application requirements for getting that access. So what are the normal regulations when you say, I mean, is it, clearly Justice Alito said, or the majority said, in Justice Alito's opinion, that mere permitting fees are not problematic. He did not get into all other costs and burdens. He said in this particular case, if you get to the burden of deeding over some portion of your land, then that's too much. But he never addressed what the middle ground might be. So you can see that there are lots of other requirements like environmental impact studies, et cetera. For the Forest Service to grant a right of access that would require something like building an entirely new road through the Forest Service, that would of course trigger NEPA. What level of NEPA review that would require is going to depend on what these plaintiffs want. And because they have never asked for anything in particular, the Forest Service can't even determine what level of NEPA review is going to be required. So it is a process. It could be expensive, but this is the cost of initially building a road to a remote area. I mean, it is expensive. There's nothing in... Even if they had an RS-2477 right away, the Forest Service isn't required to build that road for them, to maintain it for them. What we think really was happening here was these plaintiffs were simply using a forest road to access their inholdings. That's fine. Now that road has washed out and the Forest Service can't justify the cost of repairing the road right now. I mean, either for two reasons. Right. So they're not trying to force the Forest Service to repair the road. They just want to repair it themselves. Do they though? Because they've never even, they've never really taken the first step towards that. They've simply said they want to, but they won't tell the Forest Service what it is they want to do. They say they want to, but you won't let them unless they file for a permit. That's right. Yeah. They want to do... So it's like a standoff here. ...earth disturbing activities in a national forest. They're going to have to tell the Forest Service. The problem I have with this case is that there seems to be an element of futility involved. You're requesting the landowners to undertake certain action, which it just looks, let me speculate here from the facts of this case, that you're going to deny the permit. You're not going to grant the permit. And they have a problem is once we're down that we were legally obligated to get a permit to begin with before we can do anything. And that's the waiver of the rights that they're talking about. That the Forest Service would deny a permit here is completely speculative. The Forest Service has actually affirmatively suggested to these plaintiffs a couple different ways that they could restore access to their property. So if you look in the appendix at 8687, this is from April 2012. The Forest Service says, look, this has been a really unfortunate situation for you guys. Terrible fire, terrible flooding, and now your roads have washed out, or these roads have washed out. Excuse me. Here's two options we think. They're going to order the transfer. These roads are washed out. So here are two options by which we think you could reestablish vehicular access. You could build a new road over the existing alignment, or you could build a new road over a new alignment. Either way, we'll help you or the inholders organize and form a road association. We'll help you site the road if you want a new road. And guess what? We'll give you something extra. We'll give you a private road easement that you can go and record and have forever. That's something extra. That's not required. Well, they don't think they need that, I guess, unless we're talking about a road that's built after 1963. But they didn't think they needed a private road easement because they think they have one already. And that doesn't, again, mean that they are free of regulation, right? So you can look at the sewer versus BLM case that we've cited. That's a case where counties have asserted 2477 easements. It affirms still subject to Forest Service regulation. In Jenks and Adams case, those were both cases where the courts found that inholders were entitled to access under ANILCA, both still subject to Forest Service regulation. And Jenks went one further. It's quite similar. I think it's an important case here. It says not only are they subject to Forest Service regulation, we're not going to opine on their takings claim, even though they have a proposed permit from the Forest Service. We're not going to opine on that takings claim because it's not final yet. They don't yet have a final permit decision. So it would be improper for us to render an advisory opinion at this point. And that's exactly where we are here, right? We don't have anything close to knowing how the Forest Service regulations are going to apply to the possible future applications that these plaintiffs might one day file, which they are required to file if they want to do ground disturbing activities in the National Forest, whatever the source of their rights may be. And there, once again, is nothing in this Forest Service letter that says they're requiring any type of waiver of rights or claims. It's simply reiterating the very consistent position of the Forest Service that the Forest Service laws and regulations are going to apply to these end holders. So if you have no further questions, there are two ways you can affirm here. Of course, you could affirm the CFC's decision under its same reasoning that these plaintiffs have no right takings claim, or you can affirm for the additional reason we have identified that they do not have a Okay, you have three minutes. Thank you, Your Honor. I would, I think that the best place to look at this, bearing in mind the Court's earlier questions, is again the process by which we engage the Forest Service. How we came to the point where they sent us the letter, I think is critical. And in fact, if you look at the paragraphs that I've been focused on, finally we note that your letter asserts that it is the intention of the landowners to utilize and repair the road association, road associated with the vested easement in the near future. As stated above, we do not agree your clients. We basically went to them and said, we'd like to use this road. We're going to use our vested easement. And they said, okay, you can do that by going through our permitting process. But they went one step further and they said, but we don't agree that you have a vested easement. It's implicit that if we went to them in that process, and the government can stand here and say now that they wouldn't take that property right away, or that we wouldn't waive it by going through their application process. But by virtue of their letter, even just this letter puts us in a position where if we then engage after asking them what we need to do, they say, you need to get a permit and recognize you don't have a property right. That's where this becomes an issue. This letter is the final agency action that says... Let me ask you a question. Your lawsuit said if you went all the way through successfully, would establish that this property was taken. And the remedy for that is compensation. You wouldn't have anything, except you would have money. You wouldn't have access through this lawsuit to your property, right? That's correct, Your Honor. So I don't understand how you're talking about all of these things that could happen and might happen and all of that, but the bottom line is you would have to... I don't know how you would get to your property, but you would receive money and you'd be gone. Well, and Your Honor, that's exactly why we've alleged that it's not just the property and the interest in the road that's been taken. Taking away that road, they've cut off the rest of the property. And part of what this really gets down to is our concern that the Forest Service does not want to have mining re-established in this area. So while they talk about giving a road association permit to access the property, you'll notice that the Forest Service never comes out and says, well, we'll let you establish a commercial mining operation again and use that as a mine haul road as it was originally established. Well, that's a political question. Absolutely, Your Honor. But unfortunately, that's part of what this is. As you noted, a standoff between landowners that have an interest, and establishing their mine properties, which is what these are. Well, if that's a possibility, and you're saying it's a real possibility, then maybe you should go through the permitting process and this whole thing fleshed out as to what the roads are actually going to be used for. I mean, if they're going to be used for the enjoyment of this landlocked property surrounded by national property, then maybe that's what you should get if you win. But now you're talking about something else. Are the petitioners here mining on that property? I see that my time has elapsed. Thank you. Our appellants wish to be able to use this property to whatever their enjoyment may be. That may be a mining operation. There are discussions about that. After the Lost Conscious Fire went through, there's not a lot of enjoyment of this property from a scenic or recreational value that's available. But it still has absolutely a commercial mining. So if you ask for a permit and they said, as a condition of your permit, you can't use your property for commercial purposes, then you might be in a constitutional conditions circumstance. But we're not there yet. Perhaps, Your Honor. But my point is that also, and I believe we are, I really do believe that when they say, you have to surrender your permit, that we're going to get into, and this goes to your question about whether or not they'd actually grant the permit, but more importantly, the question about going through that process and the prohibitively expensive condition of getting a NEPA analysis and going through what the Forest Service would require in order to establish a mine haul road there under one of their permitting systems. That in and of itself is far and away more than just paying the permit fee. That is a much larger deal, and that gets to the coons as well. It gets to that type of taking there. Okay, thank you.